**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| ELONZIO ODUMS, | : | |
| | : | Civil Action No. 16-9145(RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| | : | |
| SOUTH WOODS STATE PRISON, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BUMB,** United States District Judge

This matter comes before the Court upon Defendant Charles Donaghy's ("Defendant") motion for summary judgment, filed on July 5, 2018. (ECF No. 39.) Plaintiff did not respond to Defendant's motion. For the reasons discussed below, the Court will grant Defendant's motion for summary judgment.

I.  BACKGROUND

On December 9, 2016, Plaintiff Elonzio Odums ("Plaintiff"), who was then incarcerated at South Woods State Prison, filed a pro se civil rights complaint (Compl., ECF No. 1) under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA")[1] against South

---

[1] The Court will address the Eighth Amendment claim under § 1983 and the NJCRA claim, N.J.S.A. § 10A:6-2(c), together because the test for cruel and unusual punishment under the New Jersey state Constitution 'is generally the same as that applied under the

Woods State Prison and employees of the New Jersey Department of Corrections. Upon review of the complaint, the Court noted that on September 26, 2016, Plaintiff had filed another civil rights action in the District of New Jersey, alleging certain facts identical to those raised in this action. (Opinion, ECF No. 3 at 2 n.1, citing Odums v. New Jersey Department of Corrections, et al., Civil Action No. 16-5950(RBK) (D.N.J. Sept. 26, 2016)). The Court struck the duplicative allegations in this action. (Id.)

The Court then screened the complaint for dismissal, pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A. The Court permitted one Eighth Amendment claim to proceed against Defendants Charles Donaghy and Sergeant Vernell and dismissed the remainder of the complaint. (Opinion, ECF No. 3; Order; ECF No. 4.) Only Defendant Donaghy was served with the complaint. (Summons Returned Executed, ECF No. 8.)

Plaintiff filed a motion to amend the complaint and sought several extensions of time in which to do so. (Mot. to Amend, ECF No. 13.) The Court ultimately denied Plaintiff's motion to amend without prejudice because Plaintiff failed to submit a proposed amended complaint. (Order, ECF No. 19.) On December 5, 2017, Defendant Donaghy filed an Answer. (Answer, ECF No. 21.) Plaintiff never filed an amended complaint.

---

federal Constitution.'" Bayete v. Ricci, 489 F. App'x 540, 543 (3d Cir. 2012) (quoting State v. Ramseur, 524 A.2d 188, 210 (1987)).

On April 17, 2018, Plaintiff sought appointment of pro bono counsel under 28 U.S.C. § 1915(e)(1). (Mot. to Appoint Counsel, ECF No. 30.) The Court denied the motion without prejudice. (Order, ECF No. 34.)

On May 22 and again on May 31, 2018, Defendant informed the Court that Plaintiff had failed to respond to discovery in this matter. (Letters, ECF Nos. 35, 36.) The Court then extended the time in which to file summary judgment motions (Order, ECF No. 37), and Defendant filed his motion for summary judgment. (Mot. for Summ. J., ECF No. 39.) Plaintiff did not respond.

II. THE COMPLAINT

Plaintiff asserted the following facts against Defendant in his complaint. Plaintiff's allegations against Sergeant Vernell, who was not served are included for context. On June 21, 2016, Plaintiff was incarcerated at South Woods State Prison, and went to see a doctor. (Compl., ECF No. 1, ¶¶9, 13.) Plaintiff was confined to a wheelchair because one of his legs was amputated below the knee. (Id., ¶14, 17.) The doctor scraped the bottom of Plaintiff's foot and told Plaintiff not to walk or stand for a few days. (Id.)

When Plaintiff returned to the "minimum unit" after seeing the doctor, Defendant told Plaintiff to get in the "boss chair (metal detector chair)." (Id., ¶¶15, 16.) Plaintiff responded that Dr. Farrow had just scraped his foot, causing it to bleed, and

3

because Plaintiff's other leg was amputated below the knee, he could not stand. (Id., ¶17.) Defendant told Plaintiff he had to get in the chair. (Id., ¶18.) Sergeant Vernell appeared and told Plaintiff if he did not get in the chair, he would be going to "lockup." (Id., ¶20.) Sergeant Vernell denied Plaintiff's request for inmate assistance to get in the boss chair. (Id., ¶19.)

Plaintiff tried to get in the chair but fell to the ground because he could not put pressure on his one leg. (Id., ¶20.) Sergeant Vernell denied Plaintiff's request for assistance and it took Plaintiff ten minutes to get up on his own. (Id., ¶21.) Plaintiff alleged that Defendant violated the Eighth Amendment under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, by deliberate indifference to his medical needs. (Id., ¶1.)

III. DEFENDANT'S STATEMENT OF MATERIAL FACTS

Defendant submitted the following "material facts to which there exists no genuine dispute," pursuant to Local Civil Rule 56.1.

> 1. Plaintiff, Elonzio Odums ("Plaintiff" or "Odums"), was an inmate formerly incarcerated in various New Jersey Department of Corrections ("NJDOC") facilities throughout the State from 2014 through 2017. (Inmate Face Sheet and Progress Notes, Linen Decl., Exhibit A, 1-13). [ECF No. 39-4.]
>
> 2. At all times relevant to the Complaint, Plaintiff was incarcerated at South Woods State Prison ("SWSP") in Bridgeton, New Jersey. (Id., Ex. A at p. 7).

4

3. In accordance with N.J.A.C. 10A:8-1.1 to -3.6, SWSP, the NJDOC facility in which Plaintiff was incarcerated from the time of the alleged events of June 21, 2016 through the time he filed his Complaint on December 9, 2016, has adopted the Inmate Handbook outlining the Inmate Remedy System Procedure, and all inmates receive said handbook as part of their orientation. (Linen Decl., ¶¶ 3, 5, Ex. B, C).

4. The Inmate Remedy System Procedure is a mechanism for the inmate population to lodge complaints, document problems and offer suggestions to the correctional facility administration. (Linen Decl., ¶ 8, Ex. C).

5. The Procedure is designed to provide inmates with a confidential method to bring issues that may exist within the correctional facility to the attention of the administration for resolution. (Linen Decl., ¶ 9, Ex. C).

6. Inmates are required to utilize the multi-part Inmate Remedy System before applying to the courts for relief. (Linen Decl., ¶ 10, Ex. C).

7. Inmates can submit remedy requests electronically or can request an Inmate Remedy System Form from their housing unit officer, social worker or the Inmate Law Library. (Linen Decl., ¶ 11, Ex. C).

8. Once an inmate completes a Remedy Form, he must submit it electronically or place the form in the appropriate Drop Box located in each housing unit. (Linen Decl., ¶ 12, Ex. C).

9. If an inmate is unable to access an electronic kiosk or a Drop Box to submit his form, because he is in closed custody

housing or has a limiting medical condition, the unit social worker or housing officer will deposit the form in the Drop Box. (Linen Decl., ¶ 13, Ex. C).

10. After an inmate submits his request electronically or places his form in the Drop Box, the form is forwarded to the appropriate supervisor for a response. (Linen Decl., ¶ 14, Ex. C).

11. There is a thirty (30) day period for processing the request. (Linen Decl., ¶ 15, Ex. C).

12. Once a staff member provides a response to the Remedy Form, he or she signs the bottom of the form to indicate that the form has been completed and that the inmate received a reply to his grievance, and the form is returned to the inmate, in paper or electronically, depending upon the means of submission. (Linen Decl., ¶ 16, Ex. C).

13. If the inmate is dissatisfied with the staff response provided in Part 3 of the form, or with the staff's electronic written response, the inmate may appeal the response by completing the Inmate Appeal section, Part 4, of the form, and resubmit the form, or submit the appeal electronically, within ten (10) days of receipt of the same. (Linen Decl., ¶ 17, Ex. C).

14. The administrator or designee will then render a decision on the Inmate Appeal. (Linen Decl., ¶ 18, Ex. C).

15. When the inmate receives the response to his appeal, he has exhausted his administrative remedies. (Linen Decl., ¶ 19, Ex. C).

16. At the request of the Attorney General's Office, personnel from SWSP conducted a

search of all records maintained by the DOC for any Remedy Forms submitted by Plaintiff, electronically or otherwise, from June 1, 2016, approximately three weeks before the date of the events Plaintiff alleges in his Complaint, through July 5, 2017, approximately one year later. (Linen Decl., ¶ 21).

17. Odums submitted a number of Remedy Forms at SWSP during the relevant time period, most having no factual bearing on the instant suit, and a total of five being filed between June 21, 2016, the date of the alleged events, and December 9, 2016, the date Plaintiff filed his Complaint. (Linen Decl., ¶ 22, Ex. D, at 19-23).

18. Two grievances filed by Odums on April 25, 2017, and April 26, 2017, however, submitted well after the filing of his Complaint in the instant suit, refer to Plaintiff's discontent with the "Boss Chair." (Linen Decl., ¶ 22, Ex. D, 45-46).

19. Odums' grievances were investigated, found to be without merit, and were closed. (Id.).

20. In addition to the fact that Odums did not attempt to make use of the administrative remedy system before filing his civil Complaint, Odums did not appeal the findings on his grievances, and as such did not exhaust his administrative remedies. (Id.).

21. Furthermore, the grievances Odums did file did not seek a remedy for alleged constitutional violations, but rather claimed violations of the Rehabilitation Act and Americans with Disabilities Act. (Linen Decl., Ex. D, 45-46).

22. On June 21, 2016, Officer Charles Donaghy ("Donaghy" or "Defendant") encountered

> Odums returning to his unit, and ordered him to get into the "B.O.S.S." metal detector chair, as policy requires that every inmate do. (Marshall-Otto Cert., Ex. A, 1, 4-5, 7, 10). [ECF No. 39-3.]
>
> 23. Odums flatly refused to get in the chair, and said that his foot was injured. (Id., at 1, 5, 7, 10).
>
> 24. Donaghy repeated the order and, in light of Odums' claim of an injured foot, offered to have another inmate assist Odums in getting into the chair. (Id., at 1, 4-5, 7, 10).
>
> 25. Odums continued to refuse the order, despite being offered help. (Id.).
>
> 26. Odums was then given a .256 charge for refusing an order, pursuant to N.J.A.C. 10A:4-4.1. (Id., at 1-10).
> 27. After receiving the charge and being medically evaluated for placement in pre-hearing detention, Odums was escorted to intake and readily got into the "B.O.S.S." chair with the same assistance Donaghy had offered him, demonstrating that there was never a legitimate reason for him to refuse Donaghy's order. (Id., at 5, 7).
>
> 28. Odums was then found guilty of the .256 charge on June 24, 2016, and sanctioned accordingly. (Id., at 1-4, 8).

(Def's Statement of Material Facts ("SOMF"), ECF No. 39-2.)

IV. DISCUSSION

    A. <u>Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1</u>

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine

8

dispute as to any material fact and the movant is entitled to judgment as a matter of law." This Court's Local Civil Rule 56.1, which supplements Federal Rule of Civil Procedure 56, provides, in relevant part:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed. The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion. In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition.

A party asserting that a fact cannot be genuinely disputed must cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A). If a party fails to

properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

B.  Summary Judgment Standard of Review

Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Daubert v. NRA Group, LLC, 861 F.3d 382, 388 (3d Cir. 2017). The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there *is* a genuine issue for trial." Id. at 391 (quoting Celotex Corp. v. Catrett, 447 U.S. 317, 324 (1986) (emphasis in Daubert)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)).

C.  Exhaustion

42 U.S.C. § 1997e(a), enacted as part of the Prison Litigation Reform Act of 1995 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of,

convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The exhaustion provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Exhaustion of administrative remedies is mandatory under the PLRA, subject to the availability of remedies in the correctional facility. Ross v. Blake, 136 S.Ct. 1850, 1858-59 (2016). Proper exhaustion of administrative remedies is required before the prisoner may seek relief in federal court. Woodford, 548 U.S. at 90. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

"[A]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." Ross, 136 S.Ct. at 1858. The Supreme Court provided three examples in which administrative remedies are unavailable. Id. at 1859. First, an administrative procedure is unavailable when it operates as a "simple dead end with officers unable or unwilling to provide any relief to aggrieved inmates." Id. Second, "an administrative scheme might be so opaque that it

11

becomes, practically speaking, incapable of use. Ross, 136 S.Ct. at 1859. Third, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860. There is no indication in the record that administrative remedies were unavailable to Plaintiff.

Plaintiff was incarcerated at South Woods State Prison when he filed the instant action on December 9, 2016. (SOMF ¶¶1-3, ECF No. 39-2.) He asserts a claim regarding prison conditions within the meaning of § 1997e(a), that Defendant was deliberately indifferent to his medical needs in violation of the Eighth Amendment.

South Woods State Prison provides an administrative remedy program for prisoners, as defined in the Inmate Handbook. (SOMF ¶¶3-15, ECF No. 39-2.) For the first step, an inmate is required to complete a Remedy Form to lodge complaints, document problems and offer suggestions to the correctional facility administration. (Id., ¶¶6-11.) If an inmate is dissatisfied with the staff member's written response to his grievance, he may appeal the response. (Id., ¶¶12-13.) An inmate remedy program that (1) gives inmates the opportunity to inform the prison administration about any complaints; (2) provides for a written response back to the inmates; and (3) the initial responses are subject to review by the Administrator's Office, constitutes an administrative remedy

for purposes of 42 U.S.C. § 1997e(a). Concepcion v. Morton, 306 F.3d 1347, 1352-55 (3d Cir. 2002). South Woods State Prison's administrative remedy program meets these requirements.

Plaintiff submitted Inmate Remedy Forms while incarcerated in South Woods State Prison, demonstrating that he was aware of the grievance procedure. (Id., ¶¶3, 17.) Within the time period between the June 21, 2016, when the events giving rise to the Complaint occurred, and December 9, 2016, when the Complaint was filed, Plaintiff filed several grievances, none of which related to the events in the Complaint. (Id., ¶17.)

Plaintiff submitted two remedy forms, four months after filing his Complaint, about being ordered to get in the boss chair despite his physical limitations. (Id., ¶¶18-20.) This, however, does not meet the demands of the PLRA. A plaintiff prisoner must properly exhaust the available administrative remedy procedures *before* filing a complaint in federal court or he is barred by the PLRA from doing so. Woodford v. Ngo, 548 U.S. 81, 100 (2006) ("saying that a party may not sue in federal court until the party first pursues all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court.") Plaintiff failed to exhaust his administrative remedies under the PLRA and Defendant is entitled

to summary judgment. The Court need not reach the merits of Plaintiff's claim against Defendant.

V.  CONCLUSION

For the reasons discussed above, the Court will grant Defendant's Motion for Summary Judgment and dismiss this action with prejudice.

An appropriate order follows.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Date: February 21, 2019